IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CAROL HUBBARD, an individual, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. <u>1:17-cv-763</u> |
| J MESSAGE GROUP CORP., a Vermont Corporation, KENNETH CHARLES ALEXANDER and DEBORAH S. ALEXANDER, husband and wife, | |
| Defendants. | |

**<u>COMPLAINT FOR DEFAMATION/DEFAMATION PER SE, FALSE LIGHT INVASION OF PRIVACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, CIVIL CONSPIRACY, INJUNCTIVE RELIEF AND DAMAGES</u>**
**(JURY TRIAL DEMANDED)**

**I.  INTRODUCTION**

1. This is an action for damages resulting from Defendants' intentional misconduct of maliciously publishing false and defamatory information about Plaintiff, both, verbally at a conference and in writing on the Internet, to a substantial number of third parties, solely to cause Plaintiff to fall into ill disrepute. Defendants' publication of the defamatory statements about Plaintiff amount of defamation *per se*, under New Mexico law. Plaintiff also alleges a claim for false light invasion of privacy resulting from Defendants' malicious publication of highly offensive and private information relating to Plaintiff, solely to cause her harm. Plaintiff also claims damages arising from Defendants' intentional infliction of emotional distress. Plaintiff's claims also include civil conspiracy arising out of Defendants' deliberate coordinated efforts to defame Plaintiff and to cause

her *severe* emotional distress. Finally, Plaintiff seeks injunctive relief to stop Defendants from continuing to publish and provide access to the false and defamatory statements they continue to publish about Plaintiff.

## II. THE PARTIES

2. Plaintiff, Carol Hubbard ("Hubbard" or "Plaintiff") is a married woman and is a citizen of the State of Virginia within the meaning and intent of 28 U.S.C. § 1332.

3. Defendant J Message Group Corp. ("JMGC" or "J Message Group") is duly organized under the laws and ordinances of the State of Vermont. Accordingly, J Message Group is a citizen of the State of Vermont within the meaning and intent of 28 U.S.C. § 1332.

4. Defendant Kenneth Charles Alexander ("Kenneth") is a citizen of the State of Washington within the meaning and intent of 28 U.S.C. § 1332.

5. Defendant Deborah S. Alexander ("Deborah") is a citizen of the State of Washington within the meaning and intent of 28 U.S.C. § 1332.

## III. JURISDICTION AND VENUE

6. This Court has personal jurisdiction over all Defendants, because Defendants transact or have transacted business within New Mexico, and the claims alleged herein arose out of conduct that occurred in New Mexico.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

8. The Court has jurisdiction over this action pursuant to diversity jurisdiction under 28 U.S.C. § 1332, because Plaintiff and Defendants are residents of different states

and the amount in controversy in this case exceeds the sum or value of $75,000.00, exclusive of interests and costs.

9. The Court has supplemental jurisdiction over Plaintiff's state law claims for defamation, false light invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and injunctive relief.

10. Plaintiff is informed and believes, and on that basis alleges, that Defendants' actions, upon which the allegations in this Complaint are based, were done in the State of New Mexico.

11. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a)(2) and 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this judicial district.

12. Therefore, Plaintiff is informed and believes, and on that basis alleges, that jurisdiction and venue is proper in this Court. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial portion of the events giving rise to the claims in this action occurred in this District.

## IV. FACTUAL BACKGROUND

13. Defendants are officers and/or directors of Defendant J Message Group.

14. Defendant J Message Group is a closed, invite-only, organization that conducts fee-based seminars and conferences, and develops written materials, to promote its doctrines of reincarnation to its members and to those interested in engaging with its programs. These seminars and publications are components of the "Companions of Wisdom" ("COW") program developed by Defendants.

3

15. Defendant J Message Group is also an authoritarian group that compels its members to adopt its reincarnation doctrines and hierarchical structure through its spiritual leader, Defendant Kenneth Alexander.

16. Defendant J Message Group's leader, Defendant Kenneth C. Alexander, claims to channel communications from a higher-being or "master guide", which includes instructions and beliefs that are binding on its members.

17. Upon information and belief, Defendant J Message Group promotes the belief that people's past lives influence their current life and life decisions.

18. Upon information and belief, Defendant J Message Group lures the interests of people who are looking for spiritual direction and inspiration, by initially promoting self-improvement, and by engaging its members in discussions and/or publications relating to broader contemporary topics such as history, economics, and spiritual development.

19. Upon information and belief, when prospective members desire to advance their association with Defendant J Message Group, and entrust details of their personal life with Defendants, Defendants collectively engage in a process that is designed to *control, isolate, shame, emotionally harm, and take advantage of its members* – conduct that is contrary to Defendant J Message Group's self-improvement banner.

20. Any member that dissents with or questions the J Message Group's directives also falls victim to J Message Group's shaming conduct, where Defendants will collectively disseminate false information coupled with outrageous accusations, in COW communications, designed solely to cause dissenting members substantial emotional trauma.

21. One of the methods Defendants collectively employ to *control, isolate, shame, emotionally harm, and take advantage of its members* is to manufacture a series of malicious defamatory content about dissenting/questioning members that is presented at large conferences and thereafter transcribed, edited, compiled, and published on the Internet.

22. Upon information and belief, Defendants Kenneth C. Alexander and Deborah S. Alexander designed and implemented the aforementioned process of publishing malicious and defamatory content about such dissenting/questioning members in order to humiliate them until such members either recant their dissent/questions or quit.

23. In or about early 2008 Plaintiff Carol Hubbard was introduced to Defendant Alexander and the JMG and COW.

24. Plaintiff's curiosity in JMG and COW continued to grow, and she began incurring fees and costs to attend JMG's conferences; but with that growth, came Plaintiff's legitimate questions about JMG and COW's operations and beliefs.

25. Defendants did not like Plaintiff's inquiring nature and resistance to unquestioned directives.

26. Defendants collectively engaged in a campaign to discredit Plaintiff and to cause problems in her personal life and to her professional reputation.

27. On one occasion, prior to Plaintiff's trip abroad to a COW conference, Plaintiff's employer inquired as to the purpose of Plaintiff's travel, and Plaintiff conveyed her employer's inquiry to Defendants.

28. Defendant Deborah urged Plaintiff to refrain from disclosing the COW conference to her employer, and instead, lie to her employer about the purpose of her overseas travel, and that if she did not lie to her employer that there would severe consequences.

29. Plaintiff refused to cooperate with Defendant Deborah's demands and protested the idea of lying to her employer.

30. Upon information and belief, Defendants are aware that Plaintiff is a government contractor with high levels of security clearance, and that any act (or accusation) of dishonesty or misconduct would compromise her professional credentials and her job. Notwithstanding this fact, Defendants continued to urge Plaintiff to lie anyway; however, Plaintiff remained honest.

31. In retaliation for Plaintiff's refusal to cooperate and lie, Defendant Alexander began interfering with Plaintiff's personal relationships by urging Plaintiff's husband, Ken Kyzer (Plaintiff's fiancé at the time), to break off his relationship with Plaintiff, because she was a "destructive" influence, and if Plaintiff's fiancé was going to be associated with COW, that he had to end his relationship with Plaintiff.  Plaintiff's fiancé protested Defendant Alexander's demands.

32. Because Plaintiff's fiancé declined to ruin his relationship with Plaintiff, on or about February 12, 2016, Defendants terminated Plaintiff's membership with Defendant JMG and COW, thereby prohibiting her from reading any of Defendant JMG's/COW's channeled communications, and from attending any COW conference or event.

33. Upon information and belief, Defendants also prohibited its members that were friends with Plaintiff from communicating with Plaintiff.

34. Beginning on or about February 12, 2016, Defendants maliciously created, compiled, and published false and defamatory statements about Plaintiff, solely to cause Plaintiff harm.

35. Defendants published the following false and defamatory statements about Plaintiff Carol Hubbard, to the members of JMG:

> *She* [Carol Hubbard] *has a split who is a porn star and is seen doing sex acts with her husband. That is all she does…. the Hubbard Soul has been part of several sex cults, including the Manson cult.*

36. Thereafter, Defendants held a JMG/COW conference in Santa Fe, New Mexico, from February 23, 2016 to February 25, 2016, wherein Defendants, again, *maliciously* created, compiled, edited, and published the following false and defamatory statements about Plaintiff:

> a. *Recently, we had to discontinue the access for one aspect of that soul [Carol Hubbard]. And why is that?* **Because…they were very predatory in this group.**
>
> b. **Sandra Otterson, another famous porn star, they do have a split in your group**, *believe it or not, but they also have one that just left;* **Carol Hubbard**.
>
> c. **The sexual predators** *you might think are fairly easy to spot because they make you uncomfortable to be around, but they're still there.* **And your friend Carol Hubbard was a sexual predator, but she was also a financial predator because she was poor**. *And you have many who come in contact with this group thinking that this is where they will make their riches.*
>
> d. *We don't judge you over the fact that you have sexual desires or that you want to have wealth. But* **if you're using other people to get it in a way that is inappropriate**, *you need to stop and think about how far*

7

*you're going to get before we see what you're doing.* **That is why Carol Hubbard and Ken Kyzer are no longer in your group.**

e. *So this guy who is, uh, previously a reader (Rob Murphy), just reactivated, how long ago was that, Deborah?*

   *Deborah [Alexander]: Three days ago.*

   *Three days ago.* **So we got right of the other one, Carol Hubbard, and now we have this guy. Okay? So, they really want to be involved in this work, but I don't take them seriously any longer…But you've got to understand just how messed up human psychology is, to see how you can get such a diversity of expression in the human form.**

f. *Why are we always so hard on the pornographers? Is it because they're predatory? In most cases, who makes all the money? It's the pornographer, it's not the porn star.*

   *Well, these two, Nina Hartley and Sandra Otterson are a little smarter because they took control of their own destiny and they are the ones making the money…But they're still predatory on people who cannot express their sexuality in a normal functional manner.*

g. *What's happened recently with the Scribe's split, Ken Kyzer, is an example of how the 2nd ray not only got subverted, but got completely kicked out. And what was it due to? I am going to be very blunt about it.* **It was about sex and money.**

   *In this group we have worked extremely hard to remove these as factors in the group's functioning.* **We have tried to keep predatory people out of the group, either who are predatory sexually or monetarily. The sexual predators you might think are fairly easy to spot because they make you uncomfortable to be around, but they're still there.**

   **And your friend Carol Hubbard was a sexual predator, but she was also a financial predator because she was poor.**

   *And you have many who come in contact with this group thinking that this is where they will make their riches.*

h. **…sexual predation is very common.** *It's a very common part of the 3rd ray Psychoanthropology because 3rd rays tend to be very insensitive to others.* **They seek ways of gaining control over others**

8

> *and whether it's sex, money or power, they'll use one or more of those things to gain, uh, the upper hand.*
>
> ***We have told the higher self of Carol Hubbard that if they want to say in the group, if they want to have a functioning member of the group, there can be no sexual or financial predation going on.***
>
> *The Scribe's higher self needs to come forward and explain what it is they did to cause the Carol Hubbard/Ken Kyzer problem from occurring in the first place because they were largely responsible for that.*
>
> ***This group cannot exist with financial or sexual predators.*** *You cannot come into this group thinking, "Well, I need to get myself laid," or "I need to make a buck."*
>
> *If you happen to meet somebody in the group and you're attracted to them and you form a relationship, that's perfectly fine.\**
>
> *But if your sole purpose of being here is to have sex, you're in the wrong place. The same is true if you're here to try to make money off of people in the group. This is not the place to do it…*
>
> ***But what you have seen with Carol Hubbard and Ken Kyzer is a perfect example of what we are trying to prevent in this group.***
> (emphasis added).

37. All of the false and defamatory statements identified above are hereinafter referred to as the, "False Statements" – none of which are true or accurate reflections of Plaintiff.

38. A few days prior to publishing the False Statements, Defendants terminated Plaintiff's membership to JMG/COW, precluding her from attending the Santa Fe conference or reading the transcribed texts of the same, and thereby deliberately concealing the False Statements from Plaintiff's reach. Defendants' conduct in doing so was malicious and in retaliation against Plaintiff's refusal to comply with Defendants' orders.

9

39. The False Statements were spoken live, in front of an audience of several hundred attendees at the Santa Fe conference, and were thereafter, transcribed and published online.

40. Upon information and belief, numerous third parties, friends, and associates of Plaintiff have heard and/or read the False Statements, causing Plaintiff extreme embarrassment, emotional distress, and causing third parties to avoid being associated with Plaintiff out of fear of being associated with the False Statements.

41. Defendants collectively assisted each other to create, compile, edit, and publish the False Statements, and did so in retaliation against Plaintiff and her fiancé.

42. Plaintiff did not consent to Defendants' conduct of publishing numerous and substantial false statements to third parties, including identifying herself a "sexual predator" or a "financial predator".

43. Defendants published the False Statements knowing that any one hearing or reading them would believe the statements were factual.

44. As a result of Defendants' publication of the False Statements, Plaintiff's friends and associates that read and/or heard the False Statements no longer associate with her.

## V.  CAUSES OF ACTION

### First Claim for Relief – All Defendants
### (DEFAMATION AND DEFAMATION PER SE)

45. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

46. In making and publishing their collective False Statements, Defendants have caused the unprivileged publication of false and defamatory statements to third parties.

47. All of Defendants' False Statements and are about and concerning Plaintiff.

48. Defendants communicated their respective statements to third parties via live presentations and the Internet, and/or intentionally made such statements on the Internet accessible to third parties.

49. Defendants' False Statements are and would be *highly* offensive to a reasonable person and have been published to third parties with the apparent intent of causing harm to the reputation and economic interests of Plaintiff.

50. In making and publishing Defendants' False Statements, Defendants each had knowledge of or acted in reckless disregard as to the falsity of their False Statements, and the false light in which Plaintiff would be placed.

51. As a result of Defendants publishing their False Statements, Plaintiff has sustained, and will continue to sustain, harm and injury including, but not limited to, damage to reputation, emotional distress, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

52. Defendants' False Statements impeach the honesty, integrity or reputation of Plaintiff.

53. Defendants' False Statements accuse Plaintiff of being a *sexual predator and financial predator*, unprofessional, unethical, incompetent, reckless, and of engaging

11

in criminal acts. The language of the False Statements, on their face, without innuendo or external facts, cast serious doubt upon Plaintiff's morals, character, and financial solvency.

54. Defendants' False Statements constitute defamation *per se* and general damages are presumed as a matter of law.

55. In making and publishing Defendants' False Statements, each Defendant acted maliciously, willfully, wantonly, and unlawfully.

56. Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendants intended to harm Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

57. Defendants' conduct justifies an award of exemplary and punitive damages.

## Second Claim for Relief – All Defendants
### (FALSE LIGHT INVASION OF PRIVACY)

58. Plaintiff realleges and incorporates by reference all of the allegations contained within the paragraphs above and below as though fully set forth herein.

59. Each Defendant, in making, editing, and publishing the False Statements, has caused Plaintiff to be published and portrayed out of context and in a false light.

60. Defendants' False Statements are about and concerning Plaintiff, Carol Hubbard.

61. Defendants communicated the False Statements to third parties, live, via the Santa Fe COW conference, and published the text of same on the Internet, and/or intentionally made such statements on the Internet, which were accessible to third parties.

62. Each Defendant's defamatory statements are and would be highly offensive to a reasonable person and have been published to third parties with the apparent intent of causing harm to the reputation and economic interests of Plaintiff.

63. In making and publishing the False Statements, each Defendant had knowledge of or acted in reckless disregard as to the falsity of each of the False Statements and the false light in which Plaintiff would be placed.

64. Each Defendant's conduct in publishing the defamatory statements pose a direct and immediate threat to Plaintiff's personal relationships, business contracts, business relationships, and have caused substantial distress to Plaintiff.

65. In making and publishing the False Statements, Defendants acted maliciously, willfully, wantonly, and unlawfully.

66. Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein each Defendant intended to harm Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

67. Defendants' conduct justifies an award of exemplary and punitive damages.

### Third Claim for Relief – All Defendants
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

68. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

69. By maliciously publishing the False Statements, and causing Plaintiff's friends to discontinue their association with Plaintiff, as well as engaging in the other conduct alleged herein, each Defendant has engaged in extreme and outrageous conduct.

70. By maliciously publishing their False Statements, as well as engaging in the other conduct alleged herein, each Defendant intended to cause severe emotional distress to Plaintiff and/or recklessly disregard the near certainty that such distress would result.

71. As a direct and proximate cause of each Defendant's conduct, Plaintiff has and will continue to suffer humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, muscle pain, lack of sleep, lack of a desire to eat, in ability to focus at work, emotional pain and suffering, anguish, and loss of self-esteem.

72. Each Defendant's conduct was intentional, malicious and done for the purpose of causing injury to Plaintiff.

73. Each Defendant's acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein each Defendant intended to harm Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

74. Defendants' conduct justifies an award of exemplary and punitive damages.

### Fourth Claim for Relief – All Defendants
### (CIVIL CONSPIRACY)

75. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

76. All of Defendants have knowingly and collectively agreed to engage in the aforementioned defamation with the objective of damaging Plaintiff's reputation, and to engage in acts to deliberately cause Plaintiff harm.

77. Defendants agreed to work with one another to create, compile, publish, then transcribe and re-publish all of the False Statements, and agreed to continue to provide third parties with access to the same, solely to cause Plaintiff harm.

78. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to emotional distress, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

### Fifth Claim for Relief – All Defendants
### (APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION)

79. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

80. As a direct and proximate result of Defendants' publication of the False Statements, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

81. The False Statements made by Defendants impeach the honesty, integrity and reputation of Plaintiff.

82. The False Statements are defamatory on their face.

83. There is a substantial risk that unless each Defendant's wrongful acts described herein are temporarily, preliminarily, and/or permanently enjoined, Defendant will continue to irreparably injure Plaintiff.

15

84. Plaintiffs have no adequate remedy at law; therefore, Plaintiff is entitled to injunctive relief.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. For a preliminary and permanent injunction compelling Defendants to remove from the access to third-parties their respective False Statements and any relating defamatory material pertaining to Plaintiff;

B. For a preliminary and permanent injunction enjoining Defendants from publishing any false statements or defamatory material about Plaintiff to any third party;

C. For general damages to be proven at trial;

D. For special damages in an amount to be proven at trial;

E. For punitive damages;

F. For Plaintiff's costs and reasonable attorneys' fees incurred herein;

G. For prejudgment and post judgment interest on all damages at the highest rate allowed by law from the date of injury until paid in full; and

H. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests its claims and cause of action be tried by jury.

RESPECTFULLY SUBMITTED this 24th day of July, 2017.

        BRIAN LEWIS LEGAL LLC

        /s/ *Brian L. Lewis*
        Brian L. Lewis
        4233 Montgomery Boulevard NE, Suite 110
        Albuquerque, New Mexico 87109
        Post Office Box 91264
        Albuquerque, New Mexico 87109
        Telephone: 505/220-0477 / Fax: 505/800-7634
        brian@lewislegalnm.com

        KELLY/WARNER, PLLC

        /s/ *Raees Mohamed*
        Raees Mohamed (pro hac vice application pending)
        8283 North Hayden Road, Suite 229
        Scottsdale, Arizona 85258
        Telephone: 480/331-9397 / Fax: 480/961-4984
        raees@kellywarnerlaw.com

        *Attorneys for the Navajo Nation*